NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

KENTH ROGERS,

        Plaintiff,

v.

DIRECTOR INTERNAL REVENUE
BUREAU, GOVERNMENT of the
VIRGIN ISLANDS,

        Defendant.

Civ. No. 14-08

**OPINION**

THOMPSON, U.S.D.J.[1]

## INTRODUCTION

This matter comes before the Court on opposing motions for summary judgment. Plaintiff Kenth Rogers ("Plaintiff") moves for summary judgment (ECF No. 193), which Defendant Virgin Islands Bureau of Internal Revenue ("Defendant") opposes (ECF No. 208). Plaintiff also moves for sanctions against Defendant. (ECF No. 204.) Defendant moves for summary judgment (ECF No. 202), which Plaintiff opposes (ECF No. 206). The Court has decided the Motions on the written submissions of the parties and without oral argument pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's Motion for Summary Judgment is denied, Plaintiff's Motion for Sanctions is denied, and Defendant's Motion for Summary Judgment is granted.

---

[1] The Honorable Anne E. Thompson, U.S. District Judge for the District of New Jersey, sitting by designation.

1

## BACKGROUND

This case arises from Defendant's allegedly unlawful levy for taxes and subsequent lien against Plaintiff. More specifically, Plaintiff alleges that he "paid the taxes due for tax years 1994 and 1999," so "Defendant's second collection of taxes for 1994 and 1999 is illegal." (Pl.'s Mot. at 5, ECF No. 193.) Plaintiff also disputes the circumstances under which he owed taxes for 2003 and 2004. Plaintiff seeks a declaratory judgment that Defendant's issued lien and levy were unlawful and an order removing the lien. (Compl. ¶ 2, ECF No. 1.)

### I. Defendant's Position and the Luke Memorandum

As a preliminary matter, Defendant contends that Plaintiff submitted numerous untimely tax returns and accrued various penalties and interest. Attached to its most recent submission, Defendant submits a Memorandum by Jacqueline Luke, Acting Chief of Delinquent Accounts and Returns in Defendant's St. Croix office. (*See generally* Luke Mem. at 1–2, ECF No. 208-1.) The Court summarizes Ms. Luke's Memorandum, which details the following tax information:

| Tax Year | Date Return Was Due | Date Plaintiff Filed Return | Tax Owed ($) | Penalty Owed ($) | Total Interest Accrued ($) | Payment/ Offset ($) | Date of Payment/ Offset |
|---|---|---|---|---|---|---|---|
| 1994 | 04/15/1995 | 12/03/1999 | 529.00 | 539.60 | 972.50 | 426.00 | 08/07/2008 |
| | | | | | | 300.77 | 08/15/2008 |
| | | | | | | 1,314.66 | 08/25/2008 |
| 1995 | 04/15/1996 | 12/03/1999 | 64.00 | 8.64 | 31.97 | 101.24 | 12/31/2000 |
| 1999 | 04/15/2000 | 01/12/2001 | 214.00 | 105.13 | 77.61 | 114.00 | 12/31/2000 |

2

| | | | | | | 100.00[2] | 01/21/2001 |
|---|---|---|---|---|---|---|---|
| | | | | | | 182.74 | 08/25/2008 |
| 2003 | 04/15/2004 | 07/09/2008 | 423.00 | 205.75 | 196.14 | 300.00 | 08/25/2008 |
| | | | | | | 194.87 | 10/31/2008 |
| | | | | | | 115.39 | 11/25/2009 |
| | | | | | | 214.63 | 01/27/2010 |
| 2004 | 04/15/2005 | 07/09/2008 | 1,079.00 | 512.54 | 767.65 | 156.37 | 01/27/2010 |
| | | | | | | 404.50 | 07/26/2010 |
| | | | | | | 51.24 | 11/15/2012 |
| | | | | | | 14.10 | 12/19/2012 |
| | | | | | | 1,732.98 | 05/08/2015 |

(*See id.*; Luke Aff. ¶ 6, ECF No. 202-1.) Consistent with the Luke Memorandum, Defendant contends Plaintiff paid only the taxes, penalties, and interest that he owed.

## II. Plaintiff's Position and Exhibits Regarding Payments

### A. *Plaintiff's Tax Liability for 1994 and 1999*

Plaintiff admits that he filed his 1994 and 1999 tax returns late, but he contends that he paid all of his unpaid taxes, including penalties and interest, for the *first* time on December 31, 2000. (Rogers Aff. ¶¶ 17–18, 21, ECF No. 195.) Plaintiff offers Check No. 1522 to support his

---

[2] The Luke Memorandum fails to include this payment, but the Luke Affidavit includes it. (*See* Luke Aff. ¶ 6.) Notwithstanding this conflict, evidence in the record that supports its existence: the sum of Plaintiff's accrued tax liability and associated penalty and interest for 1999 according to the Luke Memorandum falls $100.00 short of the sum of Plaintiff's purported payments for 1999 (*see* Luke Mem. at 1–2); and Plaintiff avers that he paid $100.00 on this precise date (Rogers Aff. ¶ 24). This conflict is the only one between the Luke Memorandum and the Luke Affidavit.

3

contention: the check, dated December 31, 2000, was written by Law Offices of Kenth W. Rogers, P.C. to Defendant for $215.24 and provides in the memo line "Taxes 1999." (*See* Pl.'s Ex. A, ECF No. 1-1.) Shortly thereafter, Plaintiff requested a tax clearance letter, but Defendant indicated that Plaintiff still owed his 1994 and 1999 taxes. (Rogers Aff. ¶¶ 22, 24.) Plaintiff alleges that his "[p]roof of payment . . . for tax year 1994 taxes has disappeared." (Pl.'s Statement of Facts Not in Dispute ("SFND") ¶ 23, ECF No. 194.) The following facts depict the circumstances under which—as Plaintiff alleges—Plaintiff paid his 1994 and 1999 taxes for the *second* time.

Despite his position that he had paid his taxes already, Plaintiff entered into an installment agreement with Defendant for tax years 1994 and 1999. On January 21, 2001, Plaintiff signed an installment agreement, but he "did so under protest and stated that [he] would not pay a cent of said installment agreement." (Rogers Aff. ¶ 24; *see also* Pl.'s SFND ¶¶ 8–10 (noting Plaintiff's conversation with Defendant and contending that Plaintiff presented proof that his payments were up to date).) Although he paid Defendant $100.00 that day, Plaintiff avers that "[he] did not pay another penny" of the installment agreement. (Rogers Aff. ¶¶ 24, 29 ("I had not paid another penny on the 1994 and 1999 tax years installment agreement. The agreement was never terminated."); Pl.'s SFND ¶ 10.)

Plaintiff did not settle his tax liability for 1994 and 1999 until August 2008; Plaintiff's own exhibits corroborate this understanding. In regard to Plaintiff's 1994 taxes, Defendant mailed to Plaintiff a First Notice of Assessment on October 19, 2001. This document notified Plaintiff that his outstanding tax liability for 1994 was $1,352.20.[3] On December 7, 2001,

---

[3] Although the Complaint purports that Plaintiff's outstanding tax liability at this time was $1,336.93 (Compl. ¶ 16) and references Exhibit C (Pl.'s Ex. C, ECF No. 1-4), that exhibit is illegible to the Court. However, Plaintiff's Exhibit 1 (ECF No. 194-1) provides a clearer picture.

4

Defendant mailed to Plaintiff a Second Notice of Assessment purporting the same balance. (Pl.'s Ex. D, ECF No. 1-5.) On April 22, 2003, Defendant mailed to Plaintiff a Final Notice purporting that his outstanding tax liability for 1994 was $972.13. (Pl.'s Ex. E, ECF No. 1-6). This Final Notice stated in bold the following: "NOTICE OF INTENT TO LEVY AND NOTICE OF YOUR RIGHT TO A HEARING PLEASE RESPOND IMMEDIATELY." (*See id.*) The parties do not dispute that Plaintiff paid $1,314.66 for tax year 1994 on August 25, 2008.[4] (Luke Aff. ¶ 5; Pl.'s SFND ¶ 17). Defendant contends that this last payment settled Plaintiff's tax liability for 1994. (Luke Mem. at 1.)

In regard to Plaintiff's 1999 taxes, Defendant mailed to Plaintiff a First Notice of Assessment on December 14, 2001, notifying Plaintiff that his outstanding tax liability for 1999 was $121.30. (Pl.'s Ex. F, ECF No. 1-8.) On April 23, 2003, Defendant mailed to Plaintiff a notice titled "URGENT" and subtitled "Immediate action is required." (Pl.'s Ex. G, ECF No. 1-9.) This notice purported that Plaintiff's outstanding tax liability for 1999 was $131.21. (*See id.*) On October 1, 2003, Defendant mailed to Plaintiff a Final Notice purporting that his outstanding tax liability for 1999 was $134.11. (Pl.'s Ex. H, ECF No. 1-10.) This Final Notice Stated in bold the following: "NOTICE OF INTENT TO LEVY AND NOTICE OF YOUR RIGHT TO A HEARING PLEASE RESPOND IMMEDIATELY." (*See id.*) The parties do not dispute that Plaintiff paid $184.74 for tax year 1999 on August 25, 2008.[5] (Pl.'s SFND ¶ 17; Luke Aff. ¶ 6.) Defendant contends that this last payment settled Plaintiff's tax liability for 1999. (Luke Mem. at 1.)

---

[4] Defendant also contends that Plaintiff paid $426.00 on August 7, 2008 and $300.77 on August 15, 2008 in order to satisfy tax year 1994. (Luke Aff. ¶ 5.)

[5] Defendant also contends that Plaintiff paid $215.24 on December 3, 2000 and $100.00 on January 21, 2001. (Luke Aff. ¶ 6.) No lien was ever sought to satisfy Plaintiff's balance from tax year 1999. (*Id.*)

5

### B. *Plaintiff's Tax Liability for 2003 and 2004*

Plaintiff also owed unpaid taxes for 2003 and 2004. On July 22, 2008, Defendant mailed a letter to Plaintiff indicating that Defendant had "no record" of tax years 2003, 2004, 2005, and 2006. (Pl.'s Ex. J, ECF No. 1-13.) In August 2008,[6] Plaintiff entered into an installment agreement with Defendant for tax years 2003 and 2004. (*See* Ex. I, ECF No. 1-12.) On August 25, 2008, Plaintiff contends that he "paid all the taxes supposedly previously owed by [Plaintiff], but refused to pay any of the installment agreement" (Pl.'s SFND ¶ 17); however, Defendant contends that Plaintiff paid all taxes owed just for tax years 1994 and 1999 and that he still owed for tax years 2003 and 2004 (Luke Aff. ¶¶ 5–6). On August 29, 2008, Defendant mailed a letter to Plaintiff indicating that Plaintiff was "current in the filing and payment of [his] tax obligation" (Ex. I-3, ECF No. 1-15)—though Defendant contends that "[t]he presence of a tax lien does not affect the approval or disapproval of tax clearance letters" such that a taxpayer will receive a tax clearance letter if he "remain[s] current with payment on the payment plan" but still has an outstanding balance (Luke Aff. ¶ 11). Defendant contends that Plaintiff settled his liability for tax year 2003 on January 27, 2010 and for tax year 2004 on May 8, 2015. (Luke Mem. at 1–2.)

### III. The Allegedly Unlawful Lien and Levy

Defendant eventually placed a lien on Plaintiff's property and levied one of Plaintiff's bank accounts. Plaintiff contends that Defendant placed a lien on Plaintiff's real property for failing to pay his taxes for 2003 and 2004 on June 22, 2009 (Pl.'s SFND ¶ 4; Rogers Aff. ¶ 35; *see also* Pl.'s Ex. M, ECF No. 1-19 (documenting lien)),[7] but Defendant contends that the date of

---

[6] Plaintiff submits that the date of this installment agreement was August 6, 2008, but Defendant submits that the date was August 26, 2008. (*Compare* Pl.'s SFND ¶ 15, *with* Luke Aff. ¶ 4.)
[7] Plaintiff offers another exhibit as documentation of these liens, but this exhibit is illegible to the Court. (*See* Pl.'s Ex. L, ECF No. 1-18.)

6

this lien is September 5, 2008 and that the lien was based only on tax year 2004 (Luke Aff. ¶ 3). On September 9, 2009 and November 13, 2009, Defendant levied Plaintiff's bank account. (Pl.'s SFND ¶ 19; Rogers Aff. ¶ 36.)

Plaintiff contends that he requested several collection due process hearings but that a hearing was never scheduled. (Rogers Aff. ¶ 34.) The Complaint purports that he requested a hearing regarding tax years 1994 and 1999 on April 5, 2010 (Compl. ¶ 36)—though the date on the corresponding exhibit is illegible to the Court (*see* Pl.'s Ex. N, ECF No. 1-20). Plaintiff requested another hearing regarding tax year 2004 on October 30, 2010. (Pl.'s Ex. O, ECF No. 1-21.) Finally, Plaintiff requested a hearing regarding tax years 1994, 1999, and 2004 on September 20, 2012. (Pl.'s Ex. P, ECF No. 1-22.)

The parties also dispute when the lien was removed from Plaintiff's property. Plaintiff avers that "Defendant removed the lien on [his] real property more than 30 days after all taxes due had been paid to Defendant" (Rogers Aff. ¶ 37), but Plaintiff does not specify that date. Plaintiff specifies only that a certificate of release was filed in the Virgin Islands Recorder of Deeds Office against Plaintiff's real property on January 25, 2016. (Pl.'s SFND ¶ 21–22.) Defendant, on the other hand, argues that Plaintiff did not submit his final payment under the lien until May 8, 2015. (Luke Aff. ¶ 9.)

Plaintiff filed the instant action against Defendant on March 21, 2014. (*See generally* Compl. ¶¶ 1–3.) Plaintiff primarily seeks (1) the removal of the lien placed on his real property and (2) damages permitted under 26 U.S.C. § 7432 and § 7433. Plaintiff contends that he has incurred direct economic losses resulting from Defendant's allegedly unlawful lien and levies. (*See, e.g.*, Rogers Aff. ¶¶ 38–41, 43–45.) In all, Plaintiff estimates that his damages amount to at least $1,750,165.77. (Pl.'s Mot. at 19.)

7

On November 6, 2018, this case was reassigned to the Honorable Anne E. Thompson (ECF No. 187), and on November 14, 2018, the Court held an in-person status conference with the parties (*see* ECF Nos. 188–90). As reflected in the Court's Order dated November 15, 2018, the Court ordered that Plaintiff and Defendant each shall file a motion for summary judgment simultaneously no later than December 14, 2018. (ECF No. 191.) As a result, the Court dismissed as moot all other pending dispositive motions. (*See id.*)

Plaintiff filed his Motion for Summary Judgment on December 7, 2018. (Pl.'s Mot. at 1.) On December 12, 2018, Defendant moved for an extension of time (ECF No. 196), which the Court granted, extending Defendant's deadline to December 20, 2018 (ECF No. 197). On December 20, 2018, Defendant again moved for an extension of time (ECF No. 198), which the Court again granted, extending Defendant's deadline to December 28, 2018 (ECF No. 199). Defendant ultimately filed its Motion for Summary Judgment on January 25, 2019 (ECF No. 202), accompanied by a Motion for Extension of Time requesting that the Court consider its late Motion for Summary Judgment (ECF No. 201). On February 6, 2019, Plaintiff opposed both Defendant's Motion for Summary Judgment (ECF No. 206) and Defendant's Motion for Extension of Time (ECF No. 205), and he also filed a Motion for Sanctions (Pl.'s Sanctions Mot. at 1, ECF No. 204). On the same day, Defendant opposed Plaintiff's Motion for Summary Judgment. (ECF No. 208.) Both of the parties' Motions for Summary Judgment and Plaintiff's Motion for Sanctions are before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead

8

a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

### I. Mirror Tax Code in the Virgin Islands

As a threshold matter, Congress has passed legislation that applies the Internal Revenue Code of the United States to the Virgin Islands. *See* Naval Appropriations Act, 48 U.S.C. § 1397 ("The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States . . . ."); *Chase Manhattan Bank, NA. v. Gov't of the V.I.*, 300 F.3d 320, 322 (3d Cir. 2002). "This statutory scheme has come to be known as the 'mirror code' because Congress designed Virgin

9

Islands tax law to mirror the tax laws in effect on the mainland. As a result of this legislation, the words 'Virgin Islands' are substituted for the words 'United States' throughout the Internal Revenue Code." *Cooper v. Commissioner*, 718 F.3d 216, 219 (3d Cir. 2013) (citing *Chase Manhattan Bank*, 300 F.3d at 322; *Bizcap, Inc. v. Olive*, 892 F.2d 1163, 1165 (3d Cir. 1989)). Indeed, "all provisions of the [Internal Revenue Code] have force in the Virgin Islands unless they are 'manifestly inapplicable or incompatible with a separate territorial income tax.'" *Hassen v. Gov't of the V.I.*, 2017 U.S. Dist. LEXIS 47758, at *5–6 (D.V.I. Mar. 30, 2017) (citing *HMW Indus., Inc. v. Wheatley*, 504 F.2d 146, 150 (3d Cir. 1974); *Chi. Bridge & Iron Co. v. Wheatley*, 430 F.2d 973, 976 (3d Cir. 1970)). Even the accompanying regulations of the Internal Revenue Code apply to taxes levied in the Virgin Islands. *Perkins v. Virgin Islands*, 2018 U.S. Dist. LEXIS 22543, at *6 (D.V.I. Feb. 12, 2018) (citing *Oelsner v. Virgin Islands*, 294 F. Supp. 2d 689, 693 (D.V.I. 2003)).

Plaintiff advances two claims under the Internal Revenue Code: (1) unjust lien pursuant to 26 U.S.C. § 7432; and (2) violation of the tax code pursuant to 26 U.S.C. § 7433. Section 7432(a) allows a taxpayer to bring a civil action for damages "[i]f any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien." Section 7433(a) allows a taxpayer to bring a civil action for damages if an employee of the Internal Revenue Service intentionally, recklessly, or by reason of negligence disregards any tax statute or regulation.

## II. Plaintiff Failed to Exhaust Administrative Remedies

Both statutes at issue explicitly require the plaintiff to exhaust administrative remedies. §§ 7432(d)(1), 7433(d)(1). The procedure for filing an administrative claim under §§ 7432 and 7433 is outlined by 26 C.F.R. §§ 301.7432-1(e) and 301.7433-1(e), respectively. Both

regulations require the plaintiff to send an administrative claim "in writing to the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer currently resides." §§ 301.7432-1(e)(1), 301.7433-1(e)(1). That administrative claim must include the following items:

> (i) The name, current address, current home and work telephone numbers and any convenient times to be contacted, and taxpayer identification number of the taxpayer making the claim;
>
> (ii) The grounds, in reasonable detail, for the claim . . . ;
>
> (iii) A description of the injuries incurred by the taxpayer filing the claim (include copies of any available substantiating documentation or evidence);
>
> (iv) The dollar amount of the claim, including any damages that have not yet been incurred but which are reasonably foreseeable (include copies of any available substantiating documentation or evidence); and
>
> (v) The signature of the taxpayer or duly authorized representative.

§§ 301.7432-1(e)(2), 301.7433-1(e)(2).

At the outset, it is worth nothing that the Court has subject matter jurisdiction in this action. Defendant argues that Plaintiff failed to exhaust his administrative remedies and thus the Court lacks subject matter jurisdiction, relying primarily on *Venen v. United States*, 38 F.3d 100 (3d Cir. 1994). (Def.'s Mot. at 4–5, ECF No. 202.) Although the court in *Venen* "characterized this exhaustion requirement as jurisdictional. . . . in light of the Supreme Court's subsequent decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), other courts of appeals have recently concluded that this exhaustion requirement is not jurisdictional." *Good v. I.R.S.*, 629 F. App'x 185, 188 (3d Cir. 2015) (internal citations omitted); *see also Hoogerheide v. I.R.S.*, 637 F.3d 634, 636–37 (6th Cir. 2011) ("In the aftermath of *Arbaugh*, it no longer is appropriate to treat the exhaustion requirements for bringing a [§ 7432 or] § 7433 claim as jurisdictional. Mandatory though the exhaustion requirement . . . may be, it is not jurisdictional."); *Hassen*, 2017 U.S. Dist.

LEXIS 47758, at *16 (analyzing *Arbaugh* and concluding that "the greater, and more persuasive, weight of authority supports the conclusion that failure to exhaust administrative remedies in accordance with [§§ 7432 and] 7433 does not raise a jurisdictional bar to relief").[8] Though this Court is persuaded that the exhaustion requirement is not jurisdictional, it is still mandatory as "[i]t is a congressionally established exhaustion imperative, not a judicially created one," such that "the courts lack discretion to waive it." *Hoogerheide*, 637 F.3d at 639 (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)).

Plaintiff has failed to exhaust his administrative remedies, barring Plaintiff's claims. Plaintiff first argues that exhaustion is an affirmative defense that Defendant has failed to both plead and prove. (Pl.'s Opp'n at 8–9, ECF No. 206.) Although "[f]ailure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant," *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002), Plaintiff had sufficient notice of this defense. Plaintiff criticizes that this argument "is not supported by any affidavit or documentary proof" (Pl.'s Opp'n at 2), but he seems to forget his admission in the Complaint:

> Pursuant to 26 U.S.C. § 7433(d)(1) and 26 [C.F.R. §] 301-7433-1(d); 26 U.S.C. § 7432 and 26 [C.F.R.] 401.6325-1, [P]laintiff is required to exhaust his administrative remedies. To exhaust administrative remedies Plaintiff personally served the Defendant with a letter on February 10, 2014, also a notice of claim and request for certificate of release subsequent thereto. Further exhaustion of administrative remedies is therefore futile.

(Compl. ¶ 9.) Before Defendant even raised this affirmative, Plaintiff had sufficient notice that it existed. *See Williams v. Nish*, 2015 U.S. Dist. LEXIS 1159, at *12–14 (M.D. Pa. Jan. 7, 2015),

---

[8] The Supreme Court found in *Arbaugh* that "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 515–16.

*aff'd*, 612 F. App'x 81 (3d Cir. 2015) (concluding that the defendant did not waive exhaustion affirmative defense where the plaintiff "was aware of the exhaustion requirement because he specifically addressed the issue in his amended complaint" and "had an opportunity to do so in his response to the motion"). Although Defendant did not offer this affirmative defense in its Answer, this omission does not constitute waiver where Plaintiff has such notice. *See Brown v. Deparlos*, 492 F. App'x 211, 216 (3d Cir. 2012) (affirming district court's finding of no prejudice where the defendant did not argue failure to exhaust until motion for summary judgment); *Nish*, 2015 U.S. Dist. LEXIS 1159, at * 12–14 (finding no waiver of affirmative defense even where "[d]efendants could have, and should have, raised the defense of failure to exhaust at an earlier stage in the litigation").

Second, Plaintiff fails to provide a copy of the February 10, 2014 letter he claims to have sent to Defendant, despite having an opportunity to do in response to Defendant's Motion for Summary Judgment. Although Plaintiff is *pro se*, Plaintiff is an attorney and knows quite well how to attach exhibits to his papers, which is evident from his previous filings. (*See, e.g.*, Pl.'s Exs. A–P, ECF No. 1 (attaching over fifteen exhibits to the Complaint).) Treasury Regulations §§ 301.7432-1(e)(2) and 301.7433-1(e)(2) require Plaintiff to include five specific items in an administrative claim, and courts strictly enforce these requirements. *See Hassen*, 2017 U.S. Dist. LEXIS 47758, at *20–21 (D.V.I. Mar. 30, 2017) (concluding that taxpayer failed to exhaust administrative remedies where taxpayer's letter failed to include the dollar amount of the claim and the grounds, in reasonable details, for the claim—both of which are required for exhaustion pursuant to § 301.7433-1(e)). Plaintiff's numerous requests for a certificate of release also fail to satisfy these requirements.

Finally, although Plaintiff indicates that exhaustion beyond his February 10, 2014 letter would be futile (Compl. ¶ 9), Plaintiff advances no argument—contained either in the Complaint or in his opposition to Defendant's Motion for Summary Judgment—as to why complying with §§ 7432 and 7433 and their associated treasury regulations would be futile. Accordingly, Plaintiff failed to exhaust his administrative remedies, thus entitling Defendant to summary judgment.

## III. No Genuine Dispute of Material Fact Exists

A separate, alternative rationale exists for entering summary judgment in favor of Defendant. The parties agree on numerous material aspects based in fact, and the assertions on which they do not agree are refuted by Plaintiff's own exhibits. First, Plaintiff hangs his hat on the allegation that he paid both "his [personal 1994] federal income taxes with a US Postal Service money order for the sum of $529.00" and "his personal 1999 federal income taxes, including penalties and interest, with check number 1522 for the sum of $215.23" on December 31, 2000. (Rogers Aff. ¶¶ 17–18.) Plaintiff's own exhibit undeniably demonstrates that Plaintiff wrote Check No. 1522 for $215.24 (*see* Pl.'s Ex. A), and Defendant agrees that Plaintiff reduced his *cumulative* tax liability on that day by that amount with that check. (Luke Mem. at 1.) But Plaintiff offers no evidence that he satisfied his tax liability for 1994 and 1999 on that date; Plaintiff avers that his other alleged proof of payment "has disappeared" or has been "lost or destroyed" (Pl.'s SFND ¶ 23).

Piecing together Plaintiff's exhibits and the Luke Memorandum, however, illustrates a clear picture.[9] Plaintiff's *initial* tax liability was $529.00 for 1994 and $214.00 for 1999. But

---

[9] The Court must note, however, that the Luke Memorandum is not perfect: it purports that Plaintiff owed a total of $2,041.10 for tax year 1994 but paid $2,041.43 (over-payment of $0.33)

14

Plaintiff filed both of these tax returns late, which he concedes (*see* Rogers Aff. ¶¶ 17–18), thus incurring additional interest and fees. Although the memo line on Check No. 1522 purports it was for "Taxes 1999," Plaintiff at the time still owed taxes and associated penalties for 1994, 1995, and 1999. As a result, $101.24 of Check No. 1522 was used to pay off (and completely satisfy) the 1995 bill and $114.00 of it was used to pay off a portion the 1999 bill; none of it was used to pay off the 1994 bill. (*See* Luke Mem. at 1.) Plaintiff presumably *intended* that Check No. 1522—written for $215.24—satisfy his tax liability for 1999, but Plaintiff's own exhibits reveal that Check No. 1522 could not have possibly satisfied in full Plaintiff's 1999 bill because he had incurred late fees and still owed taxes for other years. Simply put, Plaintiff presents no documentary proof that he paid his 1994 and 1999 taxes twice—the very foundation on which his claims depend.

Second, Plaintiff avers that he entered into several installment agreements, but he admits that he never made any payments under these installment agreements. (*See, e.g.*, Rogers Aff. ¶ 24 (stating that Plaintiff signed an installment agreement "under protest and stated that [he] would not pay a cent of said installment agreement").) The Luke Memorandum corroborates this fact. (*See* Luke Mem. at 1–2 (indicating no payment by Plaintiff from December 2000 until August 2008).) No dispute of material fact, therefore, exists on this issue.

Third, Plaintiff's own exhibits corroborate the Luke Memorandum's assertions regarding Plaintiff's various payments. The parties agree that Plaintiff paid (a) $100.00 for tax year 1999 on January 21, 2001 (*compare* Rogers Aff. ¶¶ 24, 29, *with* Luke Aff. ¶ 6); (b) $184.74 for tax year 1999 on August 25, 2008 (*compare* Pl.'s SFND ¶ 17, *with* Luke Aff. ¶ 6); and (c) $1,414.66

---

and that Plaintiff owed a total of $104.61 for tax year 1995 but paid $101.24 (under-payment of $3.37). (*See* Luke Mem. at 1.)

15

for tax year 1994 on August 25, 2008 (*compare* Pl.'s SFND ¶ 17, *with* Luke Aff. ¶ 5). Plaintiff contends that he "paid all the taxes supposedly previously owed by [Plaintiff]" on August 25, 2008, and Defendant agrees—but only to the extent that Plaintiff paid all the taxes owed *for 1994 and 1999* on that date; at the time, Plaintiff still owed taxes for 2003 and 2004. (*Compare* Pl.'s SFND ¶ 17, *with* Luke Aff. ¶¶ 5–6.) Although Plaintiff points to a letter from Defendant dated August 29, 2008 indicating that Plaintiff was "current in the filing and payment of [his] tax obligation" (Ex. I-3), Defendant points out that "[t]he presence of a tax lien does not affect the approval or disapproval of tax clearance letters," so Plaintiff would have received this clearance letter as long as he "remain[ed] current with payment on [his] payment plan" (Luke Aff. ¶ 11.)

Fourth, Plaintiff offers a variety of bizarre and unsubstantiated allegations that fail to provide a strong, or even viable, nexus to Defendant.[10] However, Plaintiff does not offer a single piece of evidence to support these allegations, and he does not elucidate the connection between them and this action. Plaintiff also fails to impute any specific conduct to Defendant that would allow a reasonable jury to infer that Defendant acted intentionally, recklessly, or negligent in failing to release a lien pursuant to § 7432, or that Defendant acted intentionally, recklessly, or negligently in disregarding any provision of the tax code pursuant to § 7433. Because the

---

[10] *See, e.g.*, Pl.'s Mot. at 2 (arguing that "Defendant's acts in destroying Plaintiff[']s tax records and creating phony assessment records to support the alleged criminal conspiracy should also lead to criminal prosecution"), 9 (alleging a "conspiracy to prevent Plaintiff from making a living from his chosen profession"); Rogers Aff. ¶¶ 1 ("I was not admitted [to the Virgin Islands bar] until 1984 based upon an unconstitutional residency requirement."), 2 (alleging that "[t]he corruption began in 1992"), 4 ("I became a good friend of Wayne Chinnery and his wife. Wayne Chinnery has been a reluctant candidate for Virgin Islands senator in 1994."), 7 ("Turnbull, in a big upset, beat Governor Schneider for the position of Governor of the Virgin Islands."), 13 (alleging conspiracy at Defendant's office), 15 (noting that Plaintiff turned down a position as an Assistant Attorney General because "[he] had seen what happened to Wayne Chinnery").

evidence is such that a reasonable jury could not return a verdict for Plaintiff, *Anderson*, 477

U.S. at 248, the Court enters summary judgment in favor of Defendant on all Counts.

## IV. Sanctions Are Not Warranted

Plaintiff argues that "Defendant's motion for summary judgment and the affidavit of Ms. Luke was presented to this court in bad faith and for the sole purpose of delay," and he requests that Defendant pay attorneys' fees and that Defendant's counsel be charged with contempt. (Pl.'s Sanctions Mot. at 3.) Plaintiff identifies Rule 56(h) of the Federal Rules of Civil Procedure in support of his Motion.[11]

Rule 56(h) states the following:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

"A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).

In the face of his high burden, Plaintiff's Motion for Sanctions fails. Plaintiff charges serious misconduct and offers lofty allegations, but these accusations begin and end exactly there: Plaintiff offers only unsupported conclusions. Moreover, as the Court points out *supra*, many of Plaintiff's own exhibits corroborate the Luke Affidavit and the Luke Memorandum.

---

[11] Although Plaintiff actually identifies Rule 56(g) of the Federal Rules of Civil Procedure (Pl.'s Sanctions Mot. at 1), the Court construes this identification as a typographical error as Rule 56(g) is unrelated to and unsupported by the remainder of the Motion. *See* Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case.").

17

Plaintiff simply objects to these submissions insofar as they undermine Plaintiff's claims. Accordingly, Plaintiff's Motion for Sanctions fails.

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is denied, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Motion for Sanctions is denied. An appropriate order will follow.

Date: 2/21/19

ANNE E. THOMPSON, U.S.D.J.